IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

MARGUERITE E. EDWARDS

:

v.                                  :   Civil Action No. DKC 15-1823

:

THOMAS J. VILSACK, Secretary,
U.S. Department of Agriculture   :

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is a motion for summary judgment filed by Defendant Thomas J. Vilsack, Secretary of the United States Department of Agriculture ("Defendant"). (ECF No. 21). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion for summary judgment will be granted.

**I.   Background**

    **A.   Factual Background**

Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff Marguerite E. Edwards ("Plaintiff"). On May 9, 2010, Plaintiff, a fifty-nine year old, African-American woman, began working at the United States Department of Agriculture (the "USDA") as a temporary program assistant. (ECF No. 21-1, at 4).

Plaintiff was one of six 12-month temporary employees hired to assist permanent staff members on a large "Accreditation Project" to update the USDA's database of accredited veterinarians. (*Id.* at 3).[1] The Accreditation Project, according to Dr. Todd H. Behre, the project's supervisor, "required a huge data acquisition, cleansing, entry, and verification process that far exceeded the time and work capacity of [USDA] full-time staff personnel." (ECF No. 21-4 ¶ 5). Four of the five other temporary employees were African American. (ECF No. 21-5, at 9). Although Plaintiff contends that she was the oldest temporary employee, Shirley Bell, another temporary employee, was only one year younger than Plaintiff. (*See* ECF Nos. 21-4 ¶ 14; 21-5, at 10).

Following an orientation session, the six temporary employees began working in cubicles on the fourth floor. (ECF Nos. 21-1, at 4; 28, at 3). On approximately May 18 or 20, Plaintiff began working in a workspace on the third floor, where she sat in close proximity to Stephen Hood, another temporary employee. (ECF Nos. 21-4 ¶ 15; 28, at 4). On May 27, Plaintiff sent Dr. Behre and other supervisors an e-mail requesting that either she or Mr. Hood be allowed to move because she was having

---

[1] The USDA also utilized an employment agency to obtain additional temporary contractor personnel "[w]hen the project exceeded the capacity of the regular staff and the temporary staff." (ECF No. 21-4 ¶ 7).

allergy symptoms that she believed were caused by Mr. Hood. (ECF No. 21-3, at 80).

On June 17, Plaintiff thought that Mr. Hood placed a chair at her desk, and she confronted him and asked him to "stop bothering around her desk." (ECF No. 28, at 5). Dr. Behre avers that Plaintiff believed Mr. Hood was "performing some sort of witchcraft" on her. (ECF No. 21-4 ¶ 15). Plaintiff sent another e-mail to Dr. Behre informing him that she did not feel safe working with Mr. Hood. (ECF No. 21-3, at 83). Mr. Hood informed his supervisors that Plaintiff said, in a threatening tone, "one of us will leave this room." (*Id.* at 84-85; ECF No. 21-8, at 2). Dr. Behre was not in the office, so Plaintiff spoke with Betsy Sillers, another supervisor, about her concerns with Mr. Hood. (ECF No. 21-3, at 82). Plaintiff informed Ms. Sillers that she was worried about a powder that she believed Mr. Hood was putting on her chair. (*Id.*). Ms. Sillers and Dr. Behre instructed Plaintiff to leave the third-floor room and sit in the office library. Despite Dr. Behre's instruction, Plaintiff returned to the third-floor room the following day. (ECF No. 21-1, at 8).

On June 18, Dr. Behre and two human resources representatives met with Plaintiff and Mr. Hood to discuss the previous day's incident. (*Id.* at 6). According to Plaintiff, Dr. Behre told her that she could either work in the third-floor

room or could take leave without pay. (ECF No. 28, at 6).
Plaintiff believed that she had retained leave from a previous
federal government job and filled out a request for leave or
approved absence, noting that it was "tentative" and that she
"may or may not take leave." (ECF No. 28-3, at 2). Plaintiff's
supervisors recall that they instructed Plaintiff to call Dr.
Behre if she decided not to report to work. (ECF Nos. 21-1, at
6; 21-3, at 86). Plaintiff did not report to work the next two
days and did not call Dr. Behre to inform him that she would not
be working. (ECF Nos. 21-1, at 7; 28, at 6). On the second
day, Plaintiff called Dr. Behre and asked if she could report to
work for the rest of the week and wear a dust mask, and
Plaintiff returned to work. (ECF No. 28, at 6).

On June 29, a USDA database administrator informed one of
Plaintiff's supervisors that Plaintiff had made mistakes in her
data entry. (ECF Nos. 21-1, at 8-9; 21-3, at 54). Plaintiff
had begun utilizing a new process that she believed was faster,
but which led to formatting problems and inaccurate entries.
Plaintiff's supervisors later discovered that Plaintiff was, on
average, completing approximately 61% of the work as the other
temporary employees. (ECF No. 21-3, at 44). In light of
Plaintiff's "continuing performance and conduct situations,"
Plaintiff was put on administrative leave. (ECF Nos. 21-1, at
9; 28-8). Plaintiff was paid while on administrative leave, but

4

was told to not report to the office or perform any official duties. (ECF No. 28-8). Dr. Behre states that Plaintiff was placed on administrative leave to provide time to formalize her termination. (ECF No. 21-3, at 44). On July 7, Dr. Behre sent Plaintiff a letter terminating her employment because she had "failed to follow instructions and [exhibited] inappropriate conduct" that "undermine[d] the basic employee/employer trust and impede[d] the goals and objectives of the agency." (ECF No. 28-9, at 2-3). Dr. Behre's letter specifically noted that Plaintiff: interrupted coworkers with questions that should have been directed to Dr. Behre; ignored instructions on completing time and attendance reports; failed to follow instructions regarding avoiding the third-floor room and Mr. Hood; failed to inform Dr. Behre that she would be absent from work; and failed to follow proper data entry procedures. (*Id.*).

### B.  Procedural History

On July 8, 2010, Plaintiff contacted an Equal Employment Opportunity counselor at the USDA. (ECF No. 21-3, at 13). On September 24, Plaintiff filed a formal complaint of discrimination with the USDA, alleging that she was wrongfully placed on administrative leave and terminated because of her age and race. (*Id.* at 9). On October 23, 2012, an administrative judge with the Equal Employment Opportunity Commission ("EEOC") granted the USDA's motion for summary judgment (ECF No. 21-9),

which was affirmed by the USDA Office of Adjudication (ECF No. 21-13).   Plaintiff appealed the decision to the EEOC, which affirmed.  (ECF No. 21-14).

On June 22, 2015, Plaintiff, proceeding *pro se*, filed a complaint commencing this action (ECF No. 1), and the court granted Plaintiff's motion to proceed *in forma pauperis* (ECF No. 5).  The complaint asserts two counts: discrimination based on age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count I); and discrimination based on race in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count II).  Following multiple extensions of time, Defendant filed the pending motion for summary judgment.  (ECF No. 21).  Plaintiff was provided with a *Roseboro* notice, which advised her of the pendency of the motion for summary judgment and her entitlement to respond within 17 days.   (ECF No. 22); *see Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (holding that *pro se* plaintiffs should be advised of their right to file responsive material to a motion for summary judgment).  Plaintiff responded to Defendant's motion (ECF No. 28), and Defendant replied (ECF No. 33).

## II.  Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure Rule 56(a) when there is no genuine dispute as to any

6

material fact, and the moving party is plainly entitled to
judgment in its favor as a matter of law. In *Anderson v.*
*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court
of the United States explained that, in considering a motion for
summary judgment, the "judge's function is not himself to weigh
the evidence and determine the truth of the matter but to
determine whether there is a genuine issue for trial." A
dispute about a material fact is genuine "if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party." *Id.* at 248. Thus, "the judge must ask
himself not whether he thinks the evidence unmistakably favors
one side or the other but whether a fair-minded jury could
return a verdict for the [nonmoving party] on the evidence
presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts
and the reasonable inferences drawn therefrom "in the light most
favorable to the party opposing the motion." *Matsushita Elec.*
*Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)
(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655
(1962)); *see also EEOC v. Navy Fed. Credit Union,* 424 F.3d 397,
405 (4th Cir. 2005). The mere existence of a "scintilla" of
evidence in support of the nonmoving party's case is not
sufficient to preclude an order granting summary judgment. *See*
*Liberty Lobby,* 477 U.S. at 252. A "party cannot create a

7

genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).  Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *See Drewitt v. Pratt,* 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

Although *pro se* litigants are to be given some latitude, the above standards apply to everyone.  Thus, as courts have recognized repeatedly, even a *pro se* party may not avoid summary judgment by relying on bald assertions and speculative arguments.  *See Smith v. Vilsack*, 832 F.Supp.2d 573, 580 (D.Md. 2011) (citing cases).

## III. Analysis

Plaintiff asserts that she was discriminated against on the basis of her race and age when she was placed on administrative leave and when her employment at the USDA was terminated. Defendant counters that the USDA placed Plaintiff on administrative leave and subsequently terminated her employment because "she was 'imperiling the data entry project' that she was hired to complete."  (ECF No. 21-1, at 3).

Title VII prohibits discrimination based on an employee's personal characteristics such as "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a); *Univ. of Texas Sw.*

*Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2525 (2013).  The ADEA prohibits employers from discriminating against employees or prospective employees because of the individual's age.  29 U.S.C. § 623(a).  The ADEA's protections apply to individuals at least forty (40) years of age, 29 U.S.C. § 631(a), and do not permit "a mixed-motives age discrimination claim."  *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 175 (2009).  Instead, Plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action."  *Id.* at 177.

To survive a motion for summary judgment, a plaintiff asserting a Title VII or ADEA claim must provide evidence of intentional discrimination through one of two avenues of proof: (1) direct or circumstantial evidence that discrimination motivated the employer's adverse employment decision; or (2) the *McDonnell Douglas* "pretext framework" that requires a plaintiff to show that the "employer's proffered permissible reason for taking an adverse employment action is actually a pretext for [discrimination]."  *Hill v. Lockheed Martin Logistics Management, Inc.,* 354 F.3d 277, 284-85 (4th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)).  Here, Plaintiff provides no direct evidence of discrimination for her Title VII or ADEA claims.  Accordingly, she must rely on the *McDonnell Douglas* framework.

Under *McDonnell Douglas*, once a plaintiff meets her initial burden of establishing a *prima facie* case for discrimination, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* at 285. Once the employer meets this burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "The final pretext inquiry merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination, which at all times remains with the plaintiff." *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) (internal quotation marks omitted).

To establish a *prima facie* case of discriminatory discipline, Plaintiff must show that: (1) she is a member of a protected class; (2) the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) disciplinary measures enforced against her (*i.e.*, administrative leave) were more severe than those enforced against other employees. *Jenkins v. Baltimore City Fire Dep't*, 862 F.Supp.2d 427, 452 (D.Md. 2012) (citing *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 510 (4th Cir. 1993)).

To satisfy the third element, "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established" by Plaintiff. *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008). "Indeed, '[s]uch a showing would include evidence that the employees dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F.Supp.3d 398, 420 (D.Md. 2015) (quoting *Haywood v. Locke*, 397 F.App'x 355, 359 (4th Cir. 2010)).

Here, Plaintiff has failed to identify a similarly situated employee. Although Plaintiff alleges that other employees made mistakes and yet were not placed on administrative leave, there is no evidence that any other employee repeatedly failed to follow explicit instructions regarding data entry and other procedures, or had issues working with colleagues that "created a continuous distraction and disruption" within the office. (ECF No. 21-4 ¶ 15). Plaintiff cannot establish a *prima facie* case of discriminatory discipline because she cannot show that any other employee had similar performance and conduct issues. *See Martin v. Montgomery Cty. Public Schools*, 223 F.Supp.2d 742, 744 (D.Md. 2002) (granting summary judgment for the defendant

because the "plaintiff . . . presented no objective evidence that a similarly situated [person outside his class], i.e., one having substantial performance difficulties, was treated any differently than he"). Accordingly, Defendant is entitled to summary judgment on Plaintiff's discriminatory discipline claims under Title VII and the ADEA.

To establish a *prima facie* case of discriminatory discharge, Plaintiff must show that: (1) she is a member of a protected class; (2) she suffered adverse employment action, which is satisfied by her termination; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) (citing *Hill*, 354 F.3d at 285). Here, Plaintiff has provided no evidence supporting her conclusory assertions that her job performance met Dr. Behre's legitimate expectations. "It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (citation and internal quotation marks omitted). As outlined in Dr. Behre's letter to Plaintiff and in e-mail correspondence from Dr. Behre to his colleagues, Plaintiff's misconduct, failure to follow instructions, and data-entry

mistakes did not meet his job performance expectations for Plaintiff, particularly given the scale and short duration of the Accreditation Project. Accordingly, Plaintiff has failed to establish a *prima facie* case of discriminatory discharge.

Even assuming Plaintiff could establish a *prima facie* case of discriminatory discipline or discharge, she has failed to show that Defendant's nondiscriminatory reasons for placing her on administrative leave and for terminating her employment were pretext for discrimination. Dr. Behre terminated Plaintiff's employment due to a combination of her performance issues, continued failure to follow instructions, and disruptive interactions with Mr. Hood and other colleagues that "undermine[d] the basic employee/employer trust and impede[d] the goals and objectives of the agency." (ECF No. 28-9, at 2-3). Dr. Behre was also concerned that Plaintiff's conduct might put Mr. Hood or other employees in danger. (ECF No. 21-3, at 84). Federal courts do "not sit as a kind of super-personnel department weighing the prudence of employment decisions made by [employers] charged with employment discrimination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (citation and internal quotation marks omitted). A court's role is not to "decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Id.* (citation and internal quotation

marks omitted). Here, there is no evidence whatsoever supporting Plaintiff's conclusory assertions that Dr. Behre's decision was motivated by discriminatory animus. Thus, even if Plaintiff was meeting Dr. Behre's job performance expectations or could point to similarly-situated comparators, she has not shown that Dr. Behre's belief that her performance and conduct were negatively impacting the success of the Accreditation Project was pretext for discrimination.

## IV.  Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
